## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DENNIS W. BLACK,**

                **Plaintiff,**

    **-vs-**                                 **Case No.  6:07-cv-1304-Orl-28GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       Plaintiff Dennis W. Black ["Black"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for disability insurance benefits and supplemental security income payments.  *See* Doc. No. 1 ("Complaint"). For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED**.

## I.      BACKGROUND

       Black was born April 7, 1958. R. 250.  On July 24, 1996, the date of Black's alleged onset date of disability, he was 38 years of age.  *Id.*  Black attended public schools in Orlando, Florida and was assigned to Gateway, an Orange County special education center. R. 235.   He completed the ninth grade, dropped out of regular high school classes in the tenth grade, and never received his GED.  *Id.*  Black's past relevant work include a farm laborer for 10 years (R. 235), a truck loader and unloader for six years (R. 235), an overhead garage door installer (R.

235), and a road striper for eight years (R. 310, 136 and 235).

On July 23, 1996, Black slipped and fell on the back of a truck while picking up a 50 pound bag of thermal paint, turning to the right and then slipping on some reflective beads on the floor.  R. 43 - 44 and 166.  On August 1, 1996, Black visited the Matthews Orthopaedic Clinic (herein "MOC") for low back pain.  R. 167.  X-rays of the lumbar spine "were essentially negative."  *Id.*  Black was sent to physical therapy for strengthening and low back increased mobilization and was prescribed Ultram.  *Id.*  In regard to work status, the examining physician mandated no lifting over 10 pounds with a sedentary job only.  *Id.*  On August 19, 1996, Black returned to MOC unscheduled due to recurrence of back pain. R. 166.  He was prescribed Flexeril and Cataflam. *Id.*  On August 21, 1996, he returned for a follow-up visit with his chief complaint being severe pain in the low back, left buttocks, groin and rectum. *Id.*  The physician reviewed his x-rays which appeared "essentially normal" and scheduled Black for a magnetic resonance imaging ("MRI").  *Id.*  He diagnosed Black with L4 nerve root pressure syndrome, left. R. 165.

On August 28, 1996, upon his return to MOC, Black was diagnosed with a "slight right paracentral disc bulge at L4-5, causing minimal mass effect upon anterior thecal sac at this level.  No definite herniated disc is seen in the lumbar spine.   Desiccation and loss of disc space between L4-5." R. 165.  Due to his direct fall on the sacrum, a Technetium scan was performed in which the following was noted:

> The configuration of the sacrum appears normal; on the lateral projection, there was some degree of irregularity in the distal third of the sacrum in the lateral view, particularly posteriorly, which could represent a facture.

R. 164.  The physician opined that Black was not able to return to work because he was hardly

able to sit down. *Id.*  On September 18, 1996, Louis P. Brady, M.D., noted that Black's scan was normal and there was no "objective evidence to explain his continued symptoms." R. 162.  On September 19, 1996, Mark A. Beckner, M.D. indicated that palpation in the coccygeal area and in the right sciatic ("SI") notch region was painful, and he felt Black had a contusion on his left buttocks. R. 163.  A review of the MRI of his back showed only a slight bulge at L4-5 primarily to the right and his bone scan was negative.  *Id.*  The doctor recommended that Black continue with therapy. *Id.*

On October 8, 1996, Black returned to MOC complaining of persistent pain in the sacral perirectal area. R. 162.  Dr. Beckner noted palpation in the coccygeal rectal area was very painful, but inspection of the rectal revealed no significant problems.  *Id.*  A neurological exam of the lower extremities was normal.  *Id.*  Dr. Beckner noted the following:  "I am concerned over the degree of pain which he is having.  Normally it is not quite this painful this far down the line from an injury such as he had."  *Id.*  He was referred to a rectal specialist, Paul Williamson, M.D., who noted that the rectal evaluation and proctoscopic evaluation was unremarkable and rectal cause of the patient's pain was not appreciated R. 162, 188.  On November 5, 1996, Black returned to MOC stating that the rectal exam was normal but he did not have the records. R. 161.  Dr. Beckner's impression was "persistent low back pain inconsistent with findings at this time" stating:

> At this point, I am not finding anything objective and it may simply be that his current symptoms cannot be explained on the basis of any objective findings. We will give him the benefit of the doubt for now and I will allow him two more weeks on light duty work.

*Id.*  On December 3, 1996, Black was seen for a second opinion by Jeffrey P. Rosen, M.D. at the Orlando Orthopaedic Center ("OOC"). R. 185-89.   Dr. Rosen noted Black's subjective

complaints far outweigh the objective findings.  R. 186.  He agreed with Dr. Beckner and stated

the following:

> Patient has reached a point of maximal medical improvement and despite his
> subjective complaints of pain, and the patient's insistence that he is having
> pain and that he cannot return to work, I find no objective basis for the above
> complaints.   Based therefore on the patient's objective examination and
> objective studies, I feel that he could return to work without restrictions.  I am
> unable to explain his continued subjective complaints of pain based on hi [sic]
> subjective examination or his radiographic studies.

R. 186 (emphasis in original).  On July 29, 1997, almost eight months later, Black returned to

OOC and was examined by Stephen R. Goll, M.D. R. 182-85.  Dr. Goll opined that Black had

degenerative disc disease, L4-5 and stated the following:

> I do not believe [Black] requires any surgical interventions.   I do believe he
> would benefit from permanent light duty restrictions of no lifting greater than
> 50 pounds, no repetitive bending.   I believe he is at maximum medical
> improvement at the present time.   No significant improvement is expected in
> the foreseeable future.   Because of objective findings and restricted range of
> motion of the lumbar spine with degenerative change noted on diagnostic
> studies, he has a permanent partial impairment of 3%.

R. 182 (emphasis in original).  He stated that the previous MRI indicated a right paracentral disc

bulge, L4-5, disc dehydration and degeneration.  *Id.*

On October 8, 1997, Black returned to OOC complaining of worsening pain of the lower

back and down the left leg. R. 180-82.  Dr. Goll diagnosed lumbar degenerative disc disease L4-

5 and ruled out herniated disc.  R. 180.  He ordered an updated MRI scan of the lumbar spine and

stated Black could return to work with light duty restrictions as previously prescribed. *Id.*  On

October 13, 1997, the MRI results revealed "degenerative disc disease at L4-5 with focal disc

protrusion centrally and slightly to the right of midline, indenting the thecal sac and narrowing

the right-sided neural foramen."  *Id.*  On October 15, 1997, Dr. Goll recommended lumbar

4

epidural steroids and that Black should return to work with light duty restrictions, no lifting greater than 50 pounds, no repetitive bending. R. 179.  On December 17, 1997, Black returned to Dr. Goll stating that the epidural steroid injections worked for only a short period of time.  *Id.*  Dr. Goll recommended a discogram to confirm whether the L4-5 disc level was the sole source of discogenic pain.  R. 178.  The discogram "demonstrated focal level of concordant pain response with injection at L4-5.  The post discogram CT shows dye extravasating out to the posterior annular margin.  Disc degeneration changes are also noted, L5-S1, but he did not have any pain with injection at L5-S1." R. 176.  Dr. Goll diagnosed Black with lumbar degenerative disc disease, L4-5 with discogenic pain syndrome, L4-5. *Id.*

On March 30, 1998, Dr. Goll performed a lumbar laminectomy, L4-5 with posterior lumbar interbody fusion, L4-5 with BAK threaded titanium cages and iliac crest bone graft and posterior lateral intertransverse fusion, L4-5. R. 174.  On May 6, 1998, Dr. Goll noted that Black was doing well following the operation and had been walking on a regular basis with little back pain and no leg pain. R. 172.  Dr. Goll's notes indicate that Black was to return to work in two months with permanent work restrictions possible. *Id.*  On June 24, 1998, Dr. Goll indicated that Black could "return to light duty work, sedentary work capacity, no prolonged sitting or standing for more than one hour at a time. No lifting greater than 10 pounds." R. 171.  On October 21, 1998, Dr. Goll stated the following:

> At this point, the patient is at maximum medical improvement from his lumbar spinal surgery with 12% permanent partial impairment per The Florida Impairment Guides.  He should have permanent light duty work restrictions of no lifting greater than 15-20 pounds, no repetitive bending.  He may do occasional twisting, squatting, climbing or reaching.  No contraindication to operation of hand or foot controls.  No standing or walking for more than six hours total during an eight hour work day, no sitting for more than five hours total during an eight hour work day or driving for longer than five hours total

> in any eight hour work day.  He will be unable to return to manual labor and,
> therefore, may be a candidate for vocational rehabilitation.

R. 169 (emphasis in original).  On April 7, 1999, Black returned to OOC and the physician noted that the physical exam revealed restricted flexion and extension of the lumbar spine but a neurological exam of the lower extremities showed a negative sitting root test. R. 168.   The doctor stated:  "The patient will continue same permanent light duty work restrictions." *Id.*

On March 2, 2001, Black filed applications for a period of disability, disability insurance benefits, and supplemental security income.  R. 250-52.  On April 10, 2001, Black underwent a consultative examination by Sam Ranganathan, M.D. wherein Dr. Ranganathan noted a lumbosacral spine sprain and LS spine surgery. R. 190-91.   An x-ray revealed no factures, dislocation or spondylolosthesis and showed intravertebral disc spaces were well preserved. R. 191.   Thereafter, on April 26 and July 18, 2001, Residual Functional Capacity ("RFC") assessments were obtained.  R. 195-209.  Each RFC indicates Black can occasionally lift 20 pounds, 10 pounds frequently, and he can stand and/or walk and sit about 6 hours in an 8-hour workday.   Additionally, he can push or pull without limits.  *Id.*   The latter RFC assessment provides postural limitations of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. R. 204.   Melissa Youmans, M.D.E. (a non-physician) indicated that Black's symptoms were consistent with back surgery and "he should be able to perform the RFC light." R. 199.

On August 7, 2001, Black underwent a General Clinical Evaluation with Mental Status and was diagnosed with major depression, single episode, severe, without psychotic features. R. 211.  Black reported using marijuana with his last use being a year ago, and he either drank six or twelve beers almost every day. R. 210.  It was recommended that Black not manage his own

benefits due to his reported memory impairment and that he enroll in a mental health treatment to include a psychiatric evaluation for consideration of psychotropic pharmacotherapy.  R. 211.

On September 1, 2001, Deborah L. Carter, Ph.D. performed a mental RFC assessment wherein she indicated that Black was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain regular attendance and the ability to maintain attention and concentrate for extended periods. R. 226.

On February 26, 2002, Black underwent a Physical Medicine Consultation by James K. Shea, M.D. R. 229-32.  Dr. Shea's assessment was severe degenerative disc disease status post L4-5 fusion and severe chronic lumbar pain. R. 232.  Dr. Shea concluded:  "He has had chronic severe low back pain since 1996.  No intervention is going to improve his medical condition.  He has failed back syndrome status post L4-5 fusion and severe degenerative arthritis." R. 234.  Dr. Shea recommended no lifting over 10 pounds, no bending at the waist, and no reaching or lifting from below waist level or above should height. R. 232.  She also opined that Black would have difficulty maintaining attention or concentration.  R. 233.

On January 9, 2003, the Honorable Henry U. Snavely, Administrative Law Judge ["ALJ"] held a hearing on Black's disability claim.  R. 30-78.  Attorney Richard A. Culbertson represented Black at the hearing.  R. 30.  Black and his wife, Patricia Black, were the only people to testify.  *Id.*

On March 11, 2003 Black underwent a psychological evaluation and was diagnosed with a pain disorder associated with psychological factors and a general medical condition, alcohol abuse/dependence (R. 235-38) and a somatoform disorder (R. 240).  Cydney Yerushalmi, Ed.D.

noted the following:

> [Black] was verbal and had adequate verbal skills, with some 'surprisingly' sophisticated vocabulary sprinkled in.  He was cooperative and friendly.  There was no evidence of a mood or thought disorder during this interview and he presented himself as a person with cognitive functioning in the average range.
>
> • • •
>
> He makes sure that his daughter and grandchildren get [to] the school bus on time.  He walks to the mailbox and back to the house.  He visits a neighbor and they talk and "waste time" before he goes back home again.
>
> • • •
>
> He was oriented to time, place, person and event.  He said that he was 'moody at times' and cried when he talked about a son who drowned in the Wekiva River in 1998.  His conversation was coherent and goal-directed.  His memory appeared intact; he was able to give his history without difficulty.

R. 236-7.  She noted that the primary reason Black is not working appears to be because of his

back pain.  R. 238.  She also indicated that Black is capable of managing his own funds. *Id.*

On April 21, 2003, the ALJ issued a decision that Black was not disabled finding the

following:

1.    Black's medically determinable impairments, individually or in combination, do not meet or medically equal any of the listed impairments.

2.    Black has the residual functional capacity ("RFC") to lift 15-20 pounds, to stand or walk for 6 hours in an 8-hour day, and to sit for 5 hours in an 8-hour day, with no repetitive bending, twisting, squatting, climbing or reaching.

3.    Black's testimony was not entirely credible.

4.    Black has the RFC to perform substantially all of the full range of light work.

R. 16-22.  Black requested review by the Appeals Council (R. 11), and on December 4, 2003,

after consideration of a letter submitted by counsel, the Appeals Council denied review. R 5-7,

R. 254-56.

On January 14, 2004, Black timely appealed the Appeals Council's decision to the United States District Court.  Case No. 6:04-cv-49-Orl-28KRS; Doc. No. 1.  On August 9, 2004, upon motion of the parties, the Honorable John Antoon II reversed and remanded Black's case for further proceedings. R. 276-84.

On June 15, 2005, Black underwent a Modified Mini-Mental State Exam and a Personality Assessment Inventory. R. 314-16.  He scored an 82/100 on the Modified Mini-Mental State Exam, and "a score below 91 is typically indicative of some deficit in cognitive functioning."  R. 315.  The record reflects a diagnosis of Major Depressive Disorder, Single Episode, Moderate, and that Black was in need of medical and mental health care to address his mood and physical problems. R. 316.  Louis P. Damis, Ph.D. noted that Black's test results on the Personality Assessment Inventory were invalid due to a high level of inconsistent responses. R. 315.  He stated:

> The most probably factors contributing to his inconsistent responding include poor understanding of test items, reading difficulty, and/or confusion.  All of these factors can be understood within the context of his depression-related concentration difficulties and his low level of educational attainment, e.g., poor reading abilities.

R. 315-16.  Dr. Damis noted that Black put forth good effort.  R. 316.  Dr. Damis assessed a Global Assessment of Functioning ("GAF") score of 58.  He further opined that Black' attention, concentration and memory functioning appear mildly to moderately impaired. R. 317.

On November 2, 2005, ALJ Snavely held a second hearing on Black's disability claim. R. 320-47.  Attorney Richard A. Culbertson represented Black at the hearing.  R. 320.  Black and Vocational Expert Walter Todorowski ("VE") were the only people to testify.  *Id.*

On November 17, 2005, Black underwent tests at the Pinder Rehabilitation Services, LLC.  Doc. No. 14-2.  He was given the complete WAIS-III with a verbal score of 67 and a performance score of 75, with a full score of 68.  *Id.*  The letter indicates:  "These are extremely low scores." *Id.*  Black also underwent the Peabody Individual Achievement Test wherein he received a Grade Level score of 2.20 in reading recognition and 1.90 in reading comprehension. *Id.*  The letter indicates they would consider Black to be illiterate.  Doc. No. 14-2.  They state further that the scores are felt to be valid and reliable.  *Id.*  They do not indicate whether the scores are consistent with Black's developmental history and the degree of functional limitation.

On November 18, 2005, the ALJ issued a decision that Black was not disabled finding the following:

1.    Black's degenerative disc disease and depression with somatization and alcohol abuse are considered severe.

2.    Black's allegations regarding his limitations are not totally credible.

3.    Black has the following RFC:  lift up to 15-20 pounds, no repetitive bending, occasionally twisting, squatting, climbing or reaching, standing or walking for 6 hours in an 8 hour workday, sitting or driving 5 hours in an 8-hour workday with slight limitations in his ability to carry out short, simple instructions, marked limitations in his ability, to carry out, understand and remember detailed instructions, slight limitations in his abilities to interact appropriately with the public, supervisors and coworkers, slight limitations in his abilities to respond appropriately to work pressures and to respond appropriately to changes in the routine work setting, and moderate limitations in his abilities to make judgments on simple work related decisions, but not precluding the ability to function satisfactorily.

4.    Black is a "younger individual".

5.    Black has the RFC to perform unskilled light work and there are a significant number of jobs in the national economy that he could perform.

10

R. 267-75.  The letter regarding the tests administered on November 17, 2007 had not yet been proffered to the ALJ.  Black requested review by the Appeals Council (R. 261), including the additional test results, and on July 28, 2007, the Appeals Council denied review. R 257-60, R. 262-63.  The Appeals Council gave a thorough review of the additional evidence submitted by Black and specifically declined to accept the test results because a narrative report did not accompany the results.  R. 257.  The Appeals Council stated further that "even if the evidence was acceptable, when considered in light of the other mental impairment evidence of record, we would not find that it would warrant any change in the [ALJ]'s decision." *Id.*  The Appeals Council proceeded to provide a summary of the evidence of record concerning Black's mental health in support of their decision. *Id.*

On August 17, 2007, Black timely appealed the Appeals Council's decision to the United States District Court.  Doc. No. 1.   On November 14, 2007, Black filed a memorandum of law in support of his appeal.  Doc. No. 14.   On January 14, 2008, the Commissioner filed a memorandum in support of his decision that Black was not disabled.  Doc. No. 15.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Black assigns three errors to the ALJ.  First, Black claims that the ALJ's finding that there are a significant number of jobs in the national economy that Black could perform is not supported by substantial evidence.  Second, Black states that the ALJ applied an incorrect legal standard by failing to adequately consider the additional evidence submitted to the Appeals Counsel.  Third, Black argues that the ALJ applied an incorrect legal standard by failing to weigh the testimony of Black's spouse.

The Commissioner argues that substantial evidence supports his decision to deny Black his claim for disability benefits.  The Commissioner states that the Appeals Counsel considered and specifically discussed the additional evidence that was provided by Black, thus not incorrectly applying the law.  Finally, the Commissioner argues that Black's wife's testimony was cumulative evidence and the ALJ did not have the obligation to explicitly address it.

## III.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to

the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.   If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled.   If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e).   An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.   In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.   *See* 20 C.F.R. § 404.1545(b).   The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.   *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).   If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).   The

term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d

16

1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to

17

allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[1]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material —  relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.[2]

---

[1] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

[2] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id.*  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

IV.     **ANALYSIS OF ALLEGED ERRORS**

     A.     **Whether the ALJ Erred By Finding That There Are a Significant Number Of Jobs In the National Economy That Black Could Perform.**

Black argues that the substantial evidence does not support the ALJ's finding that there are a significant number of jobs in the national economy that Black could perform.   At the hearing, the ALJ posed the following hypothetical question to the VE:

> The kinds of work that the most recent psychological evaluation would appear to indicate possibly be appropriate for Mr. Black, indicates that there would only be slight limitations in the ability to understand, remember, and carry out short, simple instructions, but marked limitations in detailed instructions.  And slight limitations in the ability to interact appropriately with the public, supervisors, coworkers; respond to work pressures; and respond appropriately to changes in routine work setting.  There would be moderate limitations in the ability to make judgments on simple work related decisions, but that would not preclude according to the definition of moderate – the ability to function satisfactorily.  With those limitations, would we be talking primarily about unskilled work activity?
>
>                                   . . .
>
> And if there were no physical or other emotional limitations upon one's ability to work, could there be light work activity that exists in significant numbers in the national economy under the guidelines prescribed by the Commissioner of Social Security that a person could do?

R. 340-41.  Black argues that the ALJ's hypothetical question posed to the VE is deficient in that it does not note Black's diagnoses of moderate difficulty in concentration.  Doc. No. 14 at 11. Both Dr. Carter and Dr. Damis noted that Black has moderate difficulty with concentration, and the ALJ adopted both of these opinions, giving Dr. Damis' opinion "greatest" weight.  R. 226-27, 270-71, 314-16.   Dr. Shea also opined that Black would have difficulty in maintaining attention or concentration. R. 233.   Additionally, Black points at that the VE testified that if Black were not fully able to concentrate the entire time, he would not be able to perform the jobs of a fast food worker, electronic sub-assembler or ticket seller to the extent that he makes errors

on the job.  R. 343-44.  Black argues that the ALJ's decision is not supported by substantial evidence because he did not consider Black's concentration limitations.  Doc. No. 14 at 12.

The Commissioner maintains that substantial evidence supports the ALJ's decision.  Doc. No. 15 at 12.  The Commissioner argues Dr. Damis only generally referred to Black's concentration difficulties, not specifically addressing the degree of limitation.  Doc. No. 15 at 11.  However, the Commissioner then addresses Dr. Damis' assessment of a GAF score of 58 and states:  "Thus, Dr. Carter and Dr. Damis both opined that [Black]'s ability to maintain concentration for extended periods was only moderately limited, and the ALJ accorded both opinions great weight."  *Id.* at 12.  The Commissioner argues:  "Clearly, a concentration limitation considered to be only moderate by both Dr. Carter and Dr. Damis is not the type of limitation that would rise to the level of being problematic because [Black] would not be making errors to the point that he could not perform the job."  *Id.*  Yet, the Commissioner applies no legal support for this conclusion.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.   In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  *Jones*, 190 F.3d at 1229-1230.  In

order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

At the hearing, the ALJ obtained testimony from the VE to determine whether a significant number of jobs exist in the national economy that Black can perform. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*citing Jones*, 190 F.3d at 1229).

The Court agrees with Black that substantial evidence does not support the ALJ's decision due to his failure to address Black's concentration limitations when posing a hypothetical question to the VE about jobs Black can perform. The Commissioner even stated that the ALJ's decision "is not undermined just because he did not specifically include a concentration limitation in his RFC finding or hypothetical question to the VE." Doc. No. 15 at 12. By virtue of this statement, the Commissioner admits that the ALJ's hypothetical question did not include a concentration limitation, and was therefore deficient. Moreover, following the ALJ's hypothetical, the attorney questioned the VE concerning Black's concentration limitations. R. 343-44. The VE specifically testified that difficulty in concentration would pose a problem for Black's employment. *Id.* Accordingly, it is recommended that the decision be reversed and remanded for further proceedings.

**B.** **Whether the ALJ Applied an Incorrect Legal Standard By Failing To Adequately Consider the Additional Evidence Submitted To the Appeals Council.**

Black contends that the ALJ applied an incorrect legal standard by failing to adequately consider the additional evidence submitted to the Appeals Council. Doc. No. 14 at 13.  First, Black maintains that Marilyn Curley, M.S., C.V.E., C.R.C., reported that "[i]t is felt that these scores are valid and reliable.  He appeared to put forth good effort" Doc. No. 14-2.  Thus, Black states that the Appeals Council erred in rejecting the additional evidence because there was a finding concerning whether Mr. Black's I.Q. test scores were valid. Doc. No. 14 at 16.  Black also maintains the following:

> The WAIS-III is the gold standard among nationally-recognized I.Q. tests. However, the consistency of the test scores with the claimant's developmental history and the degree of his or her functional limitation are not subjects that the test administrator is required to analyze.  Therefore, Ms. Curley is not required to discuss whether Mr. Black's I.Q. test scores are consistent with his developmental history or degree of functional limitation.

Doc. No. 14 at 15.  Black maintains that the Appeals Council should have reviewed the record and concluded that his I.Q. test scores were consistent with his developmental history and degree of functional limitations.  *Id.* at 16.  Additionally, Black points out that the results of the Peabody Individual Achievement Test indicate he is functionally illiterate.  Doc. No. 14-2.

Secondly, Black argues that the Appeals Councils falsely concluded that the additional evidence would not warrant a change in the ALJ's decision.  Doc. No. 14 at 17.  Black maintains that if the Appeals Council adequately considered the evidence of his I.Q. test scores and his reading levels, the Appeals Council would have considered whether Black meets or equals Listing 12.05C and Medical-Vocational Rule 201.17.  *Id.*  Thus, he states that the Appeals Council failed to apply the correct legal standard as required by 20 C.F.R. § 404.970(b). *Id.*

22

Black maintains that the additional evidence establishes that he meets or equals the criteria of Listing 12.05C of the Listing of Impairments and Medical-Vocational Rule 201.17.  *Id.*; R. 262.

Black maintains the following:

> The criteria of Listing 12.05C require a valid verbal, performance or full scale I.Q. of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function.  The WAIS-III indicated that Mr. Black has a full-scale I.Q. score of 68.  In addition, Mr. Black has additional and significant work-related limitations of function.

Doc. No. 14 at 17.  Additionally, Black states that the ALJ found he could not lift more than 15 to 20 pounds, could not do repetitive bending, could not do more than occasional twisting, squatting, climbing or reaching, could not stand or walk for more than six hours in an 8-hour workday, could not sit or drive for more than five hours in an 8-hour workday, has marked limitations in his ability to carry out, understand and remember detailed instructions, and has moderate limitations in his ability to make judgments on simple work-related decisions. R. 271-272, 274).  Black maintains these findings comprise additional and significant work-related limitations on his ability to function.  Thus, Black maintains that he meets or equals Listing 12.05C.

Finally, Black points out that 20 C.F.R. § 404.1564(b) provides that the use of the numeric grade is only appropriate when there is no other evidence to contradict it.  Doc. No. 14 at 18.  Moreover, he claims the results of the Peabody Individual Achievement Test establish he is functionally illiterate, which contradicts the finding that he has a limited education. Doc. No. 14 at 18-9; R. 274.  Thus, he argues that when the appropriate criteria under sedentary work are considered, Medical-Vocational Rule 201.17 requires a finding that Mr. Black is disabled.

The Commissioner argues that the Appeals Council sufficiently complied with its reviewing obligation. Doc. No. 15 at 5. The Commissioner maintains that the IQ testing does not show he meets Listing 12.05C for mental retardation. *Id.* Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, Subpart P Appendix 1, § 12.05C. "[T]he burden is on [plaintiff] to present specific medical findings that meet the various tests listed under the description of the applicable impairment . . ." *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); *see also Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

The Commissioner states that the Appeals Council did not refuse to consider the additional evidence. Doc. No. 15 at 5. Rather, the Commissioner maintains that the Appeals Council specifically discussed the additional evidence in conjunction with other evidence that was before the ALJ at the time of his decision. *Id.* The Appeals Council pointed out that since IQ testing is only part of the overall assessment for verifying the presence of mental retardation, a narrative report should accompany the test results commenting on whether the IQ scores were considered valid, and considered consistent with Plaintiff's developmental history and the degree of his functional limitation (R. 257). *See* 20 C.F.R. pt. 404, Subpart P, Appendix 1, § 12.00D6a. The Commissioner argues that although the report did state that the scores were valid and reliable, it did not state whether they were consistent with Black's developmental history and the degree of his functional limitation (R. 257), thereby precluding compliance with 20 C.F.R. pt. 404, Subpart P, Appendix 1, § 12.00D6a ("since the results of intelligence tests are only one part of the overall assessment, the narrative report that accompanies the test results should comment

on whether the IQ scores are considered valid and consistent with the developmental history and

the degree of functional limitation.").  Doc. No. 15 at 6.

Finally, the Commissioner states that Appeals Council the substantial evidence of record

before the ALJ supported the ALJ's decision, and the additional evidence would not change the

outcome even if acceptable.  *Id.*

The Commissioner states that because the tests were given by VEs, the tests were not

administered by an acceptable medical source and the results would not be due any significant

weight by the ALJ.  Doc. No. 15 at 6, 9-10.  *See* 20 C.F.R. §§ 404.1513(a); 416.913(a). The

Commissioner states that the vocational experts are considered "other sources" pursuant to

Social Security Ruling (SSR) 06-3p.  SSR 06-3p provides that:

> Although there is a distinction between what an adjudicator must consider and
> what the adjudicator must explain in the disability determination or decision,
> the adjudicator generally should explain the weight given the opinions from
> these "other sources," or otherwise ensure that the discussion of the evidence in
> the determination or decision allows a claimant or subsequent reviewer to
> follow the adjudicator's reasoning, *when such opinions may have an effect on
> the outcome of the case*.

SSR 06-3p (emphasis in original).  Thus, the Commissioner maintains the ALJ need only address

the weight given such scores when they have an affect on the outcome of the case and that they

would not have such an impact in this case.

The Commissioner also maintains that the report does not contain a diagnosis of mental

retardation.  Listing 12.05C requires "[m]ental retardation . . . ."  20 C.F.R. pt. 404, Subpart P,

Appendix 1, § 12.05.  "The introductory material to the mental disorders section of the listings

states that to be found presumptively disabled under listing 12.05, a claimant's impairment(s)

must satisfy *both* 'the diagnostic description in the introductory paragraph *and* any one of the

four sets of criteria' set forth in listing 12.05." *Id*. at 7; *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §

12.00A (emphasis in original).  The Commissioner points out that mental retardation "refers to

significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period: i.e., the evidence demonstrates or supports

onset of the impairment before age 22." *Id.*; 20 C.F.R. pt. 404, Subpart P, Appendix 1, § 12.05.

The Commissioner maintains that the record does not contain the required deficits in adaptive

functioning before age 22.  Doc. No. 15 at 6; *See* 20 C.F.R. pt. 404, Subpart P, Appendix 1, §

12.05; *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("To be considered

for disability benefits under section 12.05, a claimant must at least: (1) have significantly

subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have

manifested deficits in adaptive behavior before age 22.").  Thus, the Commissioner states that

performing unskilled work for a number of years is not comparable to having deficits of adaptive

functioning before age 22. Doc. No. 15 at 9.

The Commissioner argues that Black "cannot meet listing 12.05C because the new

evidence does not include the required diagnostic description of mental retardation." Doc. No. 15

at 7-8.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (to meet a listing, a

claimant "must have a diagnosis included in the Listings"); 20 C.F.R. § 416.925(c) and (d);

*Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (presupposing the

requirement of a diagnosis by finding that a diagnosis alone is insufficient); 20 C.F.R. pt. 404,

Subpart P, Appendix 1, § 12.00A ("Listing 12.05 contains an introductory paragraph with the

diagnostic description for mental retardation . . . .  *If your impairment satisfies the diagnostic*

*description* in the introductory paragraph . . . we will find that your impairment meets the

26

listing." (emphasis added)); *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) ("A

claimant must demonstrate that her impairment satisfies the diagnostic description for the listed

impairment in order to be found disabled thereunder." (*citing* 20 C.F.R. pt. 404, Subpart P,

Appendix 1, § 12.00A)).

The Commissioner points out that the regulations define an illiterate individual as one

who cannot read or write a simple message such as instructions or inventory lists, which Black

has not shown. *See* 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The Commissioner argues that

even if Black was illiterate, he would be able to perform the light and unskilled jobs that the ALJ

found he could perform (R. 273). Doc. No. 15 at 10. The regulations state:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than data or people) and at these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. . . . The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

20 C.F.R. pt. 404, Subpart P, Appendix 2, § 202.00(g). Thus, the Commissioner argues that

substantial evidence supports his decision and the Appeals Council did not err. Doc. No. 15 at

11.

When a plaintiff submits additional evidence to the Appeals Council, a reviewing court

must consider whether the new evidence renders the denial of benefits erroneous. *Ingram v.

Comm'r*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007). 20 C.F.R. § 404.970(b) states:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates

27

> to the period on or before the date of the administrative law judge decision. It will again review the case if it finds that the administrative law judge's actions, findings or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). Thus, the Appeals Council must review the entire record in conjunction with the newly submitted evidence and determine if the ALJ's decision is not supported by the weight of the evidence.

However, as noted above, the Appeals Council gave a detailed review of the additional evidence submitted by Black and specifically expressed why it declined to accept the test results. The Appeals Council also stated that taking the record and the new evidence as a whole, it would not disturb the ALJ's decision and it provided a lengthy reasoning to this end. To reject that decision would require us to impermissibly reweigh the evidence. Furthermore, the record does not reveal any deficits in adaptive functioning prior to age 22 aside from Black being assigned to Gateway at some unspecified point in time. Also, as the Commissioner argued, the tests are not entitled weight because they were administered by VEs. Thus, the Court recommends that this Court find that the Appeals Council adequately complied with the requirements delineated in *Ingram* and 20 C.F.R. § 404.970(b), and that the ALJ's decision not be reversed on this ground.

**C.     Whether the ALJ Applied an Incorrect Legal Standard By Failing To Weigh the Testimony Of Black's Spouse.**

Black argues that the ALJ applied an incorrect legal standard by failing to weigh the testimony of Black's spouse, Patricia Black, at the first administrative hearing. Doc. No. 14 at 20. Patricia Black testified that Black lies in bed most of the day; he cannot sit comfortably or pick his grandchildren up (R. 69); he is always in pain (R. 70); he is able to sit in a chair for 15 to 20 minutes and then he moves from side to side to alleviate the pain (R. 71); his standing to wash

28

the dishes was so painful that she told him to lie down (R. 73); she observed that he was in a lot of pain exiting the car to attend this administrative hearing (R. 75) and that after his attending this hearing, Black would spend the rest of the day in bed (R. 74).

Black argues the ALJ did not review his wife's lay testimony and state the weight he gave each item of impairment evidence or his reasons for accepting or rejecting her testimony, as required by *Lucas v. Sullivan,* 918 F.2d 1567 (11th Cir. 1990).

The Commissioner states that Patricia Black's testimony, which corresponds to Black's testimony, is cumulative evidence and was not necessary to the ALJ's decision. Doc. No. 15 at 13. First, the Commissioner argues that the ALJ is not required to recognize each piece of evidence in his decision so long as it appears to the district court that the ALJ considered Black's medical condition in its entirety. Doc. No. 15 at 12-3. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995)).

Second, the Commissioner argues that the present case is distinguishable from *Lucas*, 918 F.2d at 1574. The Commissioner points out that by including her testimony that Black spends most of the day lying down, that he cannot bend to pick up things from the floor, and that he cannot stand to do dishes, the ALJ specifically discussed her testimony in his prior decision (R. 19). The Commissioner maintains that Patricia Black's testimony is duplicative of Black's testimony in that they both testified to the effect that Plaintiff is disabled. Thus, the Commissioner argues the wife's testimony is cumulative evidence and there was no need for the ALJ to more explicitly address it than he already had. *See Dennis v. Chater*, No. 96-8394 at 2 (11th Cir. January 21, 1997) (failure to comment on cumulative evidence is not per se reversible error (copy attached; *citing Tieniber v. Heckler*, 720 F.2d 1251, 1254-55 (11th Cir. 1983)).

29

When the ALJ's decision is supported by medical evidence, "the ALJ does not err by refusing to admit lay testimony." *McCloud v. Barnhart*, 166 Fed.Appx. 410, 417 (11th Cir. 2006) (*citing Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986)).  A review of the record reveals that Patricia Black's testimony is substantially similar to, if not the same as, Black's.  Thus, her testimony is cumulative evidence.  Considering the arguments addressed by the Commissioner, it is recommended that the Court find the ALJ did not err by failing to weigh Patricia Black's testimony, and substantial evidence supported his decision.

## V.     CONCLUSION

For the reasons stated above, it is recommended that the Commissioner's decision be **REVERSED and REMANDED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within eleven (11) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 29, 2008.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE




The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable John Antoon II
United States District Judge

30

Richard A. Culbertson
Law Office of Richard A. Culbertson
Suite E
3222 Corrine Dr.
Orlando, Florida        32803


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Henry J. Snavely
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300
3505 Lake Lynda Drive
Orlando, Florida        32817